IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


ANTHONY MICHAEL SPEARS                                                    PLAINTIFF

          v.                         Civil No. 08-5171

DEPUTY HERNANDEZ; SGT. VAUGHN;
SHERIFF KEITH FERGUSON;
DEPUTY STRICKLAND; CAPTAIN
HUNTER PETRAY; LT. CARTER;
DEPUTY LEROY; DEPUTY LOWTHER;
DEPUTY GREEN; SGT. JESSEN;
NURSE MARSHA SMITH; and
DR. JOHN HUSKINS                                                        DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

The plaintiff, Anthony Michael Spears (hereinafter Spears), filed this civil rights action

pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Spears is currently incarcerated at the Arkansas Department of Correction. In this action,

Spears contends his constitutional rights were violated while he was incarcerated in the Benton

County Detention Center from October 3, 2007, to March of 2009.[1] Specifically, he contends: (1)

excessive force was used against him on April 18, 2008; (2) the grievance procedure is inadequate;

(3) his mail was interfered with; (4) the law library is inadequate; (5) he was subjected to

unconstitutional conditions of confinement; and (6) he was denied medical attention.

Defendants filed a summary judgment motion (Doc. 33). To assist Spears in responding to

the summary judgment motion, a questionnaire was propounded (Doc. 38) by the court. Spears filed

---

[1]The summary judgment record does not contain the exact date of Plaintiff's transfer to the Arkansas Department of
Correction. However, a change of address was entered in this case on March 19, 2009 (Doc. 37).

a timely response to the questionnaire (Doc. 39). The summary judgment motion is before the undersigned for issuance of this report and recommendation.

## Background

Spears was booked into the Benton County Detention Center (BCDC) on October 3, 2007, on a charge of forgery in the second degree and on a parole violation hold. *Plaintiff's Response* (Doc. 39)(hereinafter *Plff's Resp.*) at ¶ 1. He was notified in writing of the terms of his usage of the telephone system and the inmate rules. *Id.* at ¶ 2.

He signed a medical questionnaire signed on October 3, 2007. *Plff's Resp.* at ¶ 3. The questionnaire is sixteen questions long. *Defts' Ex.* 5 at page 1. Question fifteen asks if the inmate has any other medical conditions the jail should be aware of. *Id.* In response, the word "no" is indicated but under the question is written "diabetic, seizures." *Id.* This response comes just above Spears' signature. *Id.* There is no mention of Spears being on a special diet. *Id.* Spears maintains he told the deputy he was a vegetarian but it was not put into the computer. *Plff's Resp.* at ¶ 20(B).

On October 7th, Spears complained that the booking officer had put him down as a diabetic and not a vegetarian. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 5 at page 8; *Plff's Resp.* at ¶ 4 (Without knowledge to agree or disagree). Spears asked that it be corrected. *Id.* The response was "you are not on a diabetic diet. Being a vegetarian is not a medical issue." *Id.*

On October 11th, Spears submitted a grievance about not being fed a vegetarian meal. *Plff's Resp.* at ¶ 5. Captain Petray responded "you will remain on your same diet." *Id.*

On October 27th, Spears asked for legal envelopes and paper to write his lawyer. *Plff's Resp.* at ¶ 6(A). Petray responded that he would have the sergeant check on this. *Id.* Spears was able to send and receive legal mail. *Id.* at ¶ 6(B).

On December 18th, Spears asked to go to the law library. *Plff's Resp.* at ¶ 7(A). Lt. Carter responded that the law library is for those that do not have legal counsel. *Id.* Spears was seeking law library access in connection with a criminal case. *Id.* at ¶ 7(B). He was not represented by counsel in the case. *Id.* at ¶ 7(C). He did not miss any deadline for filing documents and was not preventing from filing a case or claim because he was denied law library access. *Id.* at ¶ 7(D).

On December 23rd, Spears submitted a medical request because of tooth pain. *Defts' Ex.* 5 at page 9; *Plff's Resp.* at ¶ 8(A)(Without knowledge to agree or disagree. "I do not remember and do not have the information to dispute or verify this). Spears was put on the list to see the doctor. *Id.* He was seen by the doctor on December 25th and prescribed Amoxicillin, an antibiotic. *Defts' Ex.* 5 at page 7; *Plff's Resp.* at ¶ 8(B)(Without knowledge to agree or disagree. "I remember taking Amoxicillin but for what or what day I do not know.").

On January 6th, Spears was seen by the doctor for stress. *Plff's Resp.* at ¶ 10(A). Spears was prescribed Elavil. *Id.* On January 10th, a hearing examiner determined that Spears had violated the terms of his parole and deferred the sentence pending the outcome of the new charge. *Id.* at ¶ 9.

On January 14th, Spears submitted a medical request stating he was having anxiety attacks and that the pills he was given were helping but that he was out. *Plff's Resp.* a ¶ 10(B). The response was "he told you that he would give you a few days to help you. You will not be on it permanently." *Id.*

On January 18th, Spears complained about anxiety attacks and stated that in the "free world I would be on Cymbalta because of my abnormal mood swings and violent thoughts." *Plff's Resp.* at ¶ 11(A). He asked for someone to call his doctor at St. Mary's. *Id.* He was put on the list to see

the doctor. *Id.* A release was sent to the drug store Spears stated he used. *Id.* Spears was seen by the doctor on the 25th and prescribed medication for anxiety and depression. *Id.* at ¶ 10(B).

On January 23rd, Spears got into a fight with Inmate Etherton. *Plff's Resp.* at ¶ 12(A). When deputies entered the pod to control the fight, both inmates continued to fight as Deputy Bailey attempted to place Spears on the floor. *Id.* Both inmates were given a period of lock-down after a disciplinary hearing. *Id.* at ¶ 12(B).

On February 2nd, Spears submitted a medical request stating that the medication he was taking was not working. *Defts' Ex.* 5 at page 15; *Plff's Resp.* at ¶ 13 (Without knowledge to agree or disagree.). He said he was having severe anxiety attacks. *Id.* He was put on the list to see the doctor. *Id.*

On February 27th, Spears complained of a rash. *Defts' Ex.* 5 at page 17; *Plff's Resp.* at ¶ 15 (Without knowledge to agree or disagree). He was put on the list to see the doctor. *Id.*

On March 15, 2008, Deputy Faulkenbury was in E-pod when he saw Spears standing on the top tier of the pod. *Plff's Resp.* at ¶ 17(A). Spears was told to go to the day room for his hour out. *Id.*

According to Faulkenbury's incident report, Spears walked in the direction of the day-room but then picked up the phone to see if it was turned on. *Defts' Ex.* 2 at page 7. Spears then started yelling under the stairs into the female pod. *Id.* Spears does not deny he was yelling into the female pod. *Plff's Resp.* at ¶ 17(B). Instead, he merely maintains the door under the stairs is not located at the phone. *Id.*

Faulkenbury's report indicates he then called into E-104 on the intercom and told Spears to go back to his cell. *Defts' Ex.* 2 at page 7. Spears refused. *Id.* Faulkenbury entered the pod and

told Spears to go back to his cell. *Id.* He complied. *Id.* Spears states he cannot remember exactly if this is what happened. *Plff's Resp.* at ¶ 17(C). Spears was charged with a disciplinary violation, for refusing to obey the order of a deputy, found guilty, and given ten days lock down. *Id.* at ¶ 17(E). On appeal, the decision was upheld. *Id.*

On March 18, 2008, Deputy McDaniel noticed Spears crouched on the top tier next to cell 243 in E-pod. *Defts' Ex.* 2 at page 9; *Plff's Resp.* at ¶ 18(A). Deputy Johnson came to see what Spears was doing. *Id.* According to Johnson's incident report, Spears said he had a headache and was just putting his head down. *Defts' Ex.* 2 at page 9. According to Spears, he told Johnson he was getting an eraser. *Plff's Resp.* at ¶ 18(A). McDaniel noticed Spears did not have his wristband on. *Id.* at ¶ 18(B). Sgt. Robbins asked Spears what he had been doing and Spears responded that he was "making an eraser." *Id.* at ¶ 18(C). Robbins asked where Spears' wristband was and he replied "I ripped it off and flushed it." *Id.*

Spears was given a disciplinary for altering or tampering with his identification wristband and defacing property. *Defts' Ex.* 2 at page 9. Spears was found guilty and given thirty days lock down and loss of privileges. *Id.; Plff's Resp.* at ¶ 18(E).

On March 27th, Spears submitted a medical request complaining to the medical staff that he was a vegetarian and that he did not eat meat. *Plff's Resp.* at ¶ 19(A). When he was in a regular pod, he stated he could trade his meat for vegetables. *Id.* However, he stated he could not do it on lock down. *Id.* He indicated he was steadily losing weight.[2] *Defts' Ex.* 5 at page 19.

---

[2] Spears denies he said he was steadily losing weight. *Plff's Resp.* at ¶ 19(A). However, he refers the court to the grievance dated March 27. *Defts' Ex.* 3 at page 6. On the medical request dated that same day, Spears indicated he was steadily losing weight. *Defts' Ex.* 5 at page 19.

Spears also submitted a grievance on March 27th about not being provided a vegetarian diet. *Plff's Resp.* at ¶ 20(A); *Defts' Ex.* 3 at page 6. Petray responded that when Spears was booked in he said that he was nondenominational and that he did not state anything about being a vegetarian. *Plff's Resp.* at ¶ 20(B). Petray also did stated he did not find anything on the last 16 times Spears was booked into BCDC. *Id.*

On March 31st, Spears wrote a request saying that he was a vegetarian and a Seventh Day Adventist and that he did not believe in eating meat from animals. *Plff's Resp.* at ¶ 22(A). Petray responded "I have already answered." *Id.*

This is the only time Spears wrote that he was a Seventh Day Adventist. *Plff's Resp.* at ¶ 22(B). Spears stated he grew up as a Seventh Day Adventist but practicing or believing was off and on. *Id.* at ¶ 22(C). Spears was asked if he strictly adhered to a vegetarian diet before his incarceration. *Id.* He responded: "<u>Strictly</u>" adhering to a "certain diet <u>before</u> my incarceration has no bearing on the current issue." *Id.*

The nurse saw Spears on the 31st. *Plff's Resp.* at ¶ 19(B). She noted that his weight loss was not significant. *Id.* She stated she would weigh Spears again in a week. *Id.* Spears asserts he was "never weighed . . . again for weight loss." *Id.*

On April 7th, Spears submitted a grievance stating he had been moved to a cell where he had a top bunk. *Plff's Resp.* at ¶ 24. He stated he had seizures and was supposed to be on a bottom bunk. *Id.* He asked to be moved. *Id.* Carter told Spears to ask a pod deputy. *Id.* Spears asserts when he tried to obtain a vegetarian diet he was told he was put down as having seizures. *Id.* Since they refused him a vegetarian diet based on what was said in the booking papers, he used the information on there that said he had seizures to obtain a bottom bunk. *Id.*

On April 11th, Spears submitted a medical request stating that he was out of some of his medications. *Plff's Resp.* at ¶ 25. In response, his medications were ordered. *Id.*

On April 17th, Deputy Finnegan was in E-pod searching cells. *Plff's Resp.* at ¶ 27(A). In the cell Spears occupied with Inmate Harris, cell 144, Finnegan found two cotton bedrolls and two mattress pads placed between the wall and toilet in the corner of the cell. *Id.* Finnegan also found three books, four extra rolls of toilet tissue, three extra pencils, and two extra pairs of socks. *Id.* at ¶ 27(B). Spears and Harris each said the items belonged to the other. *Id.* at ¶ 27(C). Spears was given a disciplinary for possessing items not authorized for retention by jail staff. *Id.* at ¶ 27(D). The disciplinary was reversed because the jail issued the items found in Spears' cell. *Id.*

On April 18th, while Deputy Hernandez was finishing noon medications in E102, he noticed Spears was in recreation and screaming for a pencil. *Defts' Ex.* 2 at page 15; *Plff's Resp.* at ¶ 28(A)(I did not scream. I "was asking Sgt. Jessen for a pencil."). According to Hernandez's incident report, he informed Spears there was no reason to scream and that he would give him a pencil when he was finished with dispensing the medication. *Defts' Ex.* 2 at page 15. Spears was told by Hernandez to go back to his cell but Spears refused. *Id.* Hernandez walked down from pod control and again ordered Spears to go back to his cell. *Id.* Spears continued to refuse the order and closed the door to E104. *Id.*

At this point, Hernandez's incident report indicates he took Spears by the right arm and ordered him to stop resisting. *Defts' Ex.* 2 at page 15. Spears struggled and attempted to get out of Hernandez's grasp. *Id.* Hernandez attempted to place Spears on the floor but was unsuccessful. *Id.* Cpl. Jessen radioed for assistance in E-pod and Deputy Strickland was the first to arrive. *Id.* Strickland assisted Hernandez in attempting to place Spears on the floor. *Id.*

Hernandez's report continues as follows:

Deputy Lowther and Deputy Green were also present and assisted in placing Inmate Spears on the floor. While Inmate Spears was on the floor, I took his left arm and placed it behind his back. Deputy Strickland placed his right arm behind his back. Sergeant Vaughn assisted in handcuffing Spears. After being handcuffed Deputy Strickland and I assisted Inmate Spears to his feet.

We entered E-104 and began escorting him back to his cell when he started to resist and was placed against the cell door by Deputy Strickland. While on the wall we noticed that there was blood dripping from his right eyebrow. Inmate Spears was escorted back out to pod control, and was ordered to face the wall. Deputy Lowther and I escorted inmate Spears to the nurse's station to receive medical attention. Sergeant Vaughn told me to return back to the pod. I returned to my duties without further incident.

*Defts' Ex.* 2 at page 15.

According to Spears, Hernandez opened the door and started cussing him out. *Resp.* at ¶ 28(B). Spears states he did close the door but when he went out to pod control. *Id.* at ¶ 28(C). Spears indicates inmates are supposed to close doors behind them because two doors cannot be open at the same time. *Id.* at ¶ 28(C). Spears denies Hernandez took him by the right arm and ordered him to stop resisting. *Id.* at ¶ 28(D). Instead, Spears states Hernandez shoved him against the wall and then down to the ground. *Id.*

Spears agrees that once he was on the floor he wedged his right arm between his body and the floor. *Res.* at ¶ 29. Strickland gave loud verbal commands to Spears to stop resisting and give Strickland his right hand. *Id.*

Spears said "F--- you mother f------, you want it, get it yourself." *Defts' Ex.* 2 at page 16; *Resp.* at ¶ 30 (Without knowledge to agree or disagree). Vaughn then used several knee strikes to the common peroneal area while verbally telling Spears to stop resisting and calm down. *Id.* Spears

asserts "if I am on the floor with 5 men on me kicking and punching me. Who then should calm down. I only protected my face." *Resp.* at ¶ 30.

Spears indicates other officers arrived but he doesn't know who arrived or in what order. *Resp.* at ¶ 28(E). While he was on the floor, Spears indicates he was kicked and punched. *Id.* at ¶ 28(F). He denies attempting to kick Jessen as he was trying to place an ankle lock on Spears. *Id.* at ¶ 31. Spears states he showed Vaughn that he had blood all over his face and Vaughn sent him to medical. *Id.* at ¶ 28(G).

Spears maintains Lowther and Green were kicking and punching him while he was face down on the floor. *Resp.* at ¶ 33(B). Spears asserts Vaughn, Hernandez, and Strickland kicked and punched him. *Id.* Spears also maintains Vaughn ran him face first into a cell door while he was handcuffed. *Id.*

After being seen at the nurse's station, Spears was taken to the hospital and received some stitches in his eyebrow. *Resp.* at ¶ 35. On April 18th, Spears complained of pain because of his stitches and other abrasions and was put on the list to see the doctor. *Defts' Ex.* 5 at page 30.

On April 19th, Deputy Shear was passing out medication and Spears became very belligerent. *Resp.* at ¶ 36(A). Shear told Spears to keep quiet unless a deputy was talking to him and Spears responded "f--- you." *Id.*

Spears was ordered not to curse and to go back to his cell. *Defts' Ex.* 2 at page 19. Deputy Stanton escorted Spears into his cell. *Id.* Stanton verbally called Shear for assistance in Spears' cell. *Id.*

According to Shear, Spears was ordered to get on his knees in the back of the cell. *Defts' Ex.* 2 at page 19. Spears was not following orders and was yelling at Stanton, turning away from the

wall in an aggressive manner.  *Id.*  Stanton delivered one common peroneal knee strike to your right leg.  *Id.*  Shear indicates Spears pushing off the wall and trying to turn around.  *Id.*  Shear's report continues:

> I delivered one common peroneal knee strike to Spears' left leg.  I heard Sergeant Bridges tell Inmate Spears to stop resisting.  Inmate Spears continued fighting to stay on his feet.  I placed Inmates Spears on the floor.  Sergeant Bridges restrained Inmates Spears' feet, while Deputy Stanton and I tried to gain positive control of his arms.  I ordered Inmate Spears to put his arms behind his back numerous times.  Inmate Spears continued rolling around on the floor, holding his arms into his chest.  Deputy Darner tried gaining positive control of Inmate Spears' left arm, and Inmate Spears kept resisting.  I warned Inmate Spears that if he kept resisting he would be sprayed.  Inmate Spears said, "F------ spray me then."  Due to Inmate Spears continual non-compliance, I administered a one-second burst of oleoresin capsicum spray to his facial area.  I ordered Inmate Spears, Anthony to stay on the floor until everyone left the cell.
>
> Once we left the cell I went to take care of an inmate we had waiting.  When I was finished with the intake, approximately 10 minutes later, I escorted Inmate Spears to the shower for decontamination.  I instructed Inmate Spears on the best way to wash off the oleoresin capsicum.  I gave Inmate Spears clean whites and stripes, and escorted him to a different cell.  I told Inmate Spears time would be added to his disciplinary action, due to his actions.

*Defts' Ex.* 2 at page 19.[3]

Spears states he was antagonized.  *Resp.* at ¶ 36(B).  He also maintains Stanton only called to Shear for assistance after he was in his cell and out of sight of the camera.  *Id.*  Spears then contends he was shoved into the wall.  *Id.*  He asserts because they were out of sight of the cameras they can say he was aggressive when he was not.  *Id.* at ¶ 36(C).

According to Spears, Stanton did not kick him in the leg but instead kicked him in the ribs.  *Resp.* at ¶ 36(D).  He also maintains Shear punched him in his back.  *Id.* at ¶ 36(E).

---

[3]Deputies Shear and Stanton are not parties to this case.

Spears agrees he continued fighting to stay on his feet. *Resp.* at ¶ 36(F). He also agrees Shear placed him on the floor and Bridges restrained his feet, while Stanton and Shear tried to gain control of his arms. *Id.* He agrees Shear ordered him to put his arms behind his back numerous times and that he continued rolling around on the floor holding his arms into his chest. *Id.* He agrees he was warned he would be sprayed if he kept resisting and that a single one-second burst of spray was administered to his facial area. *Id.* at ¶ 36(G). He agrees he was given the opportunity to shower. *Id.* at ¶ 36(H).

On April 20th, Deputy Arhangelsky entered Spears' cell and found two extra sheets. *Resp.* at ¶ 37. Spears admitted that the sheets were his. *Id.* Time was added to his lock down. *Id.*

On April 20th, Sgt. Carlton noticed large amounts of water on the floor in E-104. *Defts' Ex.* 2 at page 26. He entered the pod with Cpl. Becker in an effort to find out where the water came from. *Id.* Carlton concluded that the water had come from Spears' cell. *Defts' Ex.* 2 at page 26; *Resp.* at ¶ 38(A).

On April 26th, Spears complained he was not able to sleep well and had insomnia. *Resp.* at ¶ 40. He stated he used to take 25 mg., of something but could not remember the name. *Id.* He was put on the list to see the doctor. *Id.*

On May 8th, Spears submitted a medical request stating "my bubble packet just run out can I get them reordered?" *Defts' Ex.* 5, Vol. 2, at page 2; *Resp.* at ¶ 41. The nurse responded by asking: "what med are you talking about?" *Id.*

On May 8th, while he was out for recreation, Spears got into a fight. *Resp.* at ¶ 42(A). The inmates were warned to stop fighting. *Id.* at ¶ 42(B). When the fighting didn't stop, Arhangelsky

deployed O.C. spray. *Id.* According to Arhangelsky's report, he deployed a single one second burst. *Defts' Ex.* 2 at page 32. According to Spears, he was sprayed three times. *Resp.* at ¶ 42(B).

On May 9th, Spears submitted a medical request. *Defts' Ex.* 5, Vol. 2, at page 1. He stated he had been sprayed three times with pepper spray and his eyes were still burning. *Id.* He was put on the list to see the doctor. *Id.*

On May 9th, Spears complained that on mail call Deputy Leroy opened legal mail of his and gave it to the wrong inmate. *Resp.* at ¶ 44(A). Petray responded that he would check into the allegations. *Id.*

Spears maintains Leroy intentionally opened his legal mail and gave it to another inmate. *Resp.* at ¶ 44(B). He believes this "because when I asked her why she done this she stated: 'It doesn't matter you have it now don't you?'" *Id.* He did receive his legal mail but it was an hour later and he received it from another inmate. *Id.* at ¶ 44(C).

On May 18th, Spears' recreation was terminated early and he was locked down because he was passing correspondence to a female inmate. *Resp.* at ¶ 45. On May 20th, Spears came out of his cell toward the day room in an aggressive manner after calling for his cell door to be opened. *Id.* at ¶ 46(A). Deputy McQuire attempted to grab a hold of Spears by the shirt.[4] *Id.* Spears made his way to the stairs on the right side of the pod when McQuire took him by the arm. *Id.* at ¶ 46(B). Spears continued down the stairs and was headed for Trustee Alexander. *Id.* McQuire attempted to gain complete control of Spears, but he was able to get away by turning his body in circles. *Id.* Four other officers responded and were able to gain control of Spears. *Id.*

---

[4]Deputy McGuire is not a party to this case.

On May 25th, Spears complained he was having a hard time keeping asleep and that he did not feel like he had gotten any rest. *Resp.* at ¶ 49. He was told "we don't give sleeping pills." *Id.*

On June 15th, Spears said "I am having severe pain in my head when I fall asleep, almost like right behind my eyes." *Resp.* at ¶ 50. He was put on the list to see the doctor. *Id.*

On June 17th, Faulkenbury saw Spears kick something under the door to another cell. *Resp.* at ¶ 51(A). The other inmate then returned something to Spears which he picked up. *Id.* Spears turned away from pod control to talk to the inmate and had his hands in front of his body so that Faulkenbury could not see what he was doing. *Defts' Ex.* 2 at page 37. Spears was called to pod control. *Id.* He was told to bring a book he had tossed on a table with him. *Id.* He complied. *Id.* He denied passing anything with another inmate. *Id.*

He later brought a second book to pod control. *Resp.* at ¶ 51(D). He said "here tell that d----- - this was the other book in that cell." *Id.* Spears was given lock down for possessing items not authorized by staff and for offensive language toward jail staff. *Id.*

On July 3rd, Spears complained that on May 9th when he was out on his recreational hour he was called out of the pod by Hernandez.[5] *Defts' Ex.* 3; *Resp.* at ¶ 52 (I did not state it in that order. *But see Original Complaint.*) He stated Hernandez began to cuss at him, an argument ensued, Hernandez and others tried to restrain him, and that he was injured. *Id.* Petray responded "this incident was reviewed and it did not happen as you state." *Id.*

On July 5th, Spears complained about his fear of contracting hepatitis when he cut his eyebrow during an incident in the jail. *Defts' Ex.* 5, Vol. 2, at page 5; *Resp.* at ¶ 53(A). He asked

---

[5]The May 9th date is apparently an error on Spears' part. The date of the incident in which Spear sustained a facial laceration is April 18th. *See Resp.* at ¶ 54(B)(only sustained a facial laceration one time).

to be "checked out" since the guy in the cell where he hit his eyebrow supposedly had Hepatitis. *Id.* The nurse responded: "we don't do that." *Id.* Spears maintains he has contracted Hepatis. *Resp.* at ¶ 53(B).

On July 8th, Spears complained that he was being denied medical attention because he believed that he caught a disease in the jail on 5-09-08 when his head was "split open and your head was rubbed over the door of E-141. The inmate in that cell had hepatitis."[6] *Resp.* at ¶ 54(A). Petray responded "if you have a medical issue here you need to put in a medical. This incident has been reviewed and it did not happen as you state." *Id.*

On July 8th, Spears submitted another grievance complaining of the incident which occurred involving Hernandez and stated that he was "rushed head first into the door of E-104, cell 141" and "my temple above my right eye was split open." *Resp.* at ¶ 55. Petray responded: "I have already answered this. This incident did not happen as you state." *Id.*

On July 10th, Spears complained about the 4-18-08 incident. *Resp.* at ¶ 56. Petray responded "This incident has been reviewed and it did not happen as you state." *Id.* On July 11th, Spears asked for the names of the other officers who helped restrain him on 4-18-08. *Id.* at ¶ 57. Petray responded and provided the names. *Id.*

On July 11th, Spears complained that he had not gotten outdoor recreation for six months because he was on lock down. *Resp.* at ¶ 58(A). Petray responded "you are getting your recreation." *Id.* Spears was given time out of the cell each day. *Id.* at ¶ 58(B). However, he states: "Jail policy says we are not allowed to run or work out unless outside in a rec[] yard." *Id.*

---

[6]Once again, the May 9th date is apparently in error. The correct date is April 18th.

On July 12th, Spears was found without a wristband. *Resp.* at ¶ 59. He was locked down for this infraction. *Id.*

On July 12th, Spears was found talking through the emergency door into E-107. *Resp.* at ¶ 60. He was locked down for this infraction. *Id.*

That same day, Spears complained that he had written several grievances and that they were not getting answered. *Id.* at ¶ 61. Petray responded "I am answering your grievances." *Id.*

On July 12th , Spears wrote a grievance because there were no cameras in the hallways, pods, or cells to provide inmates with safety. *Resp.* at ¶ 62(A). "Because an officer or deputy of Benton County can do or say anything to an inmate and get away with it." *Id.* Petray responded that "you have no reason to fear for your safety. Follow the rules of the jail." *Id.*

Each time he was disciplined, Spears was provided with a hearing. *Resp.* at ¶ 62(C). He states he asked to appeal every disciplinary but was denied that right on January 23rd and on March 18th. *Id.*

On July 13th, Spears asked if he could have outdoor recreation since he was on lock down. *Resp.* at ¶ 63. Staff responded "you are entitled to 1 hour of rec out of your cell. It is left to the discretion of the pod deputies on whether or not you go outside. If you want to go outside for rec, ask deputy." *Id.* However, Spears stated the deputies would never let them go out doors. *Id.*

On July 18th, Spears requested access to the law library stating "I have a law suit against the county that I am acting as my own attorney." *Resp.* at ¶ 65. His request was approved. *Id.*

On July 18th, Spears asked to speak to a doctor about mental health issues. *Defts' Ex.* 5, Vol. 2, at page 6. He was put on the list to see the doctor. *Id.*

That same day, Spears complained his grievances were not being answered. *Resp.* at ¶ 67. Petray responded "your grievances are being answered." *Id.* Spear submitted a second grievance complaining that Petray was back dating the dates on the responses. *Resp.* at ¶ 68. Petray responded "your grievances are being answered." *Id.*

On July 18th, Spears complained that he wrote a grievance about outdoor recreation and that he asked pod deputies if he could have outside recreation; Spears states he was told it was not policy to allow lock down detainees outside. *Resp.* at ¶ 69. Carter stated that outdoor recreation was a privilege. *Id.* Petray responded "You are getting your recreation." *Id.*

On July 18th, Spears asked that someone sign his form on his inmate account. *Resp.* at ¶ 70. Petray signed the form. *Id.*

On July 21st, Spears requested use of the law library and was granted access. *Resp.* at ¶ 71. On July 21st, Spears complained that on May 9th he wrote a grievance about a legal letter being opened and given to another inmate. *Resp.* at ¶ 72. He wanted to know if anything was done. *Id.* Petray responded "This situation was looked into by Sgt. Torres. The deputy gave the wrong letter to an inmate unintentionally. You were aware of this." *Id.*

On July 21st, Spears complained that his grievances were not being answered; He suggested that the staff were not complying with the inmate rights form. *Resp.* at ¶ 73. Petray responded "I have answered your grievances." *Id.*

On July 22nd, Spears complained that the law library was out of date and that some books had missing pages. *Resp.* at ¶ 74. Petray responded that "the books in the law library are what is available." *Id.* Spears submitted a second grievance that day complaining Petray was not reading what was sent to him. *Id.* at ¶ 76. Petray responded that "this has been answered." *Id.*

On July 23rd, Spears complained that he was told by a transport officer that "since I crossed a red line that my rec was up and since I was in lock down rec was a privelege [sic]. By federal guidelines I am allowed 1 hour out of my cell. But Benton County uses it as a form of punishment by taking it from us." *Resp.* at ¶ 77. Petray responded "you are getting your recreation. However, you are still required to follow the rules of this jail. If you do not follow the rules then yes, you will be put back up." *Id.*

On July 24th, Spears requested the names of all the inmates who were assigned to E pod on April 18. *Resp. at* ¶ 78. He was provided the names. *Id.* Spears states he also requested their cell numbers and was not provided with this information. *Id.*

On July 27th, July 28th, August 5th, August 11th, August 15th, August 20th, September 9th, and September 15th, Spears asked to use the law library. *Resp.* at ¶¶ 79-81, 85, 87(A), 100, 107, 114. Each request was approved. *Id.* On August 5th, Spears complained he was not getting enough time in the law library. *Id.* at ¶ 82(A). Spears indicates he sometimes got fifteen minutes in the library and other times got thirty minutes. *Id.* at ¶ 82(B). It varied depending on what deputy was on duty. *Id.* On September 23, Spears complained when he was approved for the law library it took two weeks before he got to go. *Resp.* at ¶ 116. Petray said he would speak to the shift sergeants. *Id.*

On August 8th, he asked why the females in lock down can have church with the preachers that come up but the men on lock down can't go to the religious service at all. *Resp.* at ¶ 84; *Defts' Ex.* 3. Petray responded "The Chaplain are volunteers. They see who they want. Lock downs can go to church but not as a group." *Id.*

On August 11th, Spears complained about bad anxiety attacks. *Defts' Ex.* 5, Vol. 2, at page 9; *Resp.* at ¶ 86 (Without knowledge to agree or disagree). He was put on the list to see doctor. *Id.*

On August 17th, Spears was given recreation at 11:40. *Resp.* at ¶ 88. That same day, Spears complained that several inmates had just flooded E-Pod but his room was dry and he had nothing to do with it. *Id.* Spears stated that Deputy Grant had come to do a change of chemicals and turned all of the water off as "group punishment." *Id.* The pod was flooded several other times over the next two days. *Id.* at ¶¶ 90-99.[7]

On August 20th, Deputy Freeman was passing out medications. *Defts' Ex.* 2 at page 45; *Resp.* at ¶ 101(no answer given). Spears received his medications and was instructed to return to his cell. *Id.* On his way back, he stopped at cell 147. *Id.* He grabbed a piece of paper from underneath the door and began to head back to his cell. *Id.* Spears was told to drop the piece of paper and return to his cell. *Id.* He went back to his cell but refused to drop the paper. *Id.* Spears was locked down for not obeying the orders of the deputy. *Id.*

On August 27th, Cpl. Nance observed a fight in E-104. *Resp.* at ¶ 103. Nance called for assistance and left pod control. *Id.* Once the door was opened Nance saw Spears holding Inmate Rusher in a head lock and punching him in the face. *Id.* Nance ordered the inmates to the ground. *Id.* Spears let go of Rusher and dropped to the ground. *Id.* Nance handcuffed Spears and a deputy escorted him to pod control. *Id.*

On September 6th, Spears complained that his medicine was not working. *Resp.* at ¶ 105. He was scheduled to see the doctor. *Id.*

---

[7]Several of Spears' claims about being subjected to unconstitutional conditions of confinement and the imposition of group punishment were addressed in *Spears v. Petray, et al.,* Civil No. 08-5203. The claims regarding the flooding of the pod between August 17-19, the shutting off of the water, and his contention that he was unconstitutionally subjected to group punishment are addressed in that case.

On September 10th, Spears complained about his medication which he said was switched by the doctor. *Resp.* at ¶ 106. He was put on the list to see the doctor. *Id.*

On September 14th, Spears complained that his medication was not working because they kept stopping and starting the medicine. *Defts' Ex.* 5, Vol. 2, at page 13. It was noted that Spears saw the doctor on September 12th. *Id.*

On September 15th, Spears asked for additional paper to write his interrogatories in his lawsuit. *Resp. at* ¶ 113. He was were told to ask a pod deputy. *Id.*

Spears was seen by the jail medical staff on or about December 25, 2007, January 6, 2008, January 25th, February 3rd, February 29th, March 31st, April 18th, April 21st, April 25th, April 30th, May 13th, June 10th, August 6th, September 8th, September 12th, and September 22nd. *Resp.* at ¶ 119; *Defts' Ex.* 5, Vol. 1 at page 29; *Defts' Ex.* 5, Vol. 2 at pages 7, 8 & 12. He was provided with a variety of medications. *Resp.* at ¶ 120(A). However, he believes Nurse Smith put his life at risk when she would not check him for Hepatitis or allow him to see the doctor so he could check on Spears. *Id.* at ¶ 112(C). With respect to Dr. Huskins, Spears states he is the supervisor of Nurse Smith and should have had the last say so whether an inmate was checked for disease. *Id.* at ¶ 112(D).

On September 8th, Spears was sentenced to 20 years in the department of corrections with 10 years suspended. *Resp.* at ¶ 121.

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a . . . verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### Discussion

Defendants have now presented the following arguments in support of their motion for summary judgment: First, in view of the facts and circumstances confronting them, defendants argue only reasonable force was used against Spears on April 18th; Second, defendants contend the available grievance procedure is not unconstitutional; Third, defendants contend there is no evidence Spears' mail was unlawfully interfered with; Fourth, defendants maintain Spears was not subjected to unconstitutional conditions of confinement; Fifth, defendants assert Spears was not denied adequate medical care; Sixth, defendants argue there is no basis on which Sheriff Ferguson can be held liable for the alleged unconstitutional actions; Finally, even if the court finds Spears' suffered some constitutional injury, defendants argue they are entitled to the protection of qualified immunity because there is no evidence they violated clearly established law.

-20-

***Excessive Force***

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  "[T]he constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution." *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001).

In this case, defendants indicate Spears was a pretrial detainee when the alleged excessive force occurred. *Defendants' Brief* (Doc. 34) at page 4.  In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*.  The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency.   As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees.  *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard.").  The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed

necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

In this case, Spears contends he was shoved against the wall and thrown to the ground by Hernandez. *Resp.* at ¶¶ 28(D), 28 (E). While on the floor, Spears asserts he was kicked and punched by Lowther, Green, Vaughn, Hernandez, and Strickland. *Id.* at ¶¶ 28(F), 30, 33(B). He maintains he only tucked his arms under him to protect his face from harm but concedes he refused orders to give Strickland his right hand. *Id.* at ¶¶ 28(D), 29. While being escorted to his cell, Spears contends Hernandez and Strickland ran him face first into a cell door causing injury to his right eyebrow and requiring six stitches. *Id.* at ¶¶ 28(G), 33(A), 33(B).

Spears' jail medical records indicate he was taken to the nurse's station by Vaughn. *Defts' Ex.* 5 at page 18. It was noted he had abrasions on his check, scratches on the right side of his neck and just above his shoulder area, and an approximately one-half inch cut above his right eye. *Id.* His medical records from Mercy Medical Health Emergency Department indicate he had a laceration of his face, a sprain of his shoulder/arm, a contusion on his hand, and a contusion of the forearm. *Id.* at page 22. The laceration was sutured and he was directed to return in six days for suture removal. *Id.* at page 22. *Cf. Wilson v. Gaddy*, ____ U.S. ____, 2010 WL 596513 (Feb. 22, 2010)(Certiorari granted and judgment reversed "[b]ecause District Court's approach, affirmed on appeal, is at odds with *Hudson's* direction to decide excessive force claims based on the nature of the force rather than the extent of the injury. . . . That is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Extent of the injury is one factor to be considered)(citations omitted).

Defendants maintain Spears refused directions to return to his cell, was resisting their efforts to gain control of him, was assisted to the floor by Hernandez, Strickland, Lowther, and Green, and was placed against a cell door because he continued to resist. *Defts' Ex.* 2 at page 15. While on the floor, the incident reports indicate Vaughn applied several knee strikes to Spears' common peroneal area. *Defts' Ex.* 2 at page 16.

Viewing the evidence in the light most favorable to Spears, we believe there are genuine issues of fact as to whether Hernandez, Strickland, Lowther, and Green, and Vaughn used excessive force against Spears. The court cannot at the summary judgment stage merely choose to believe the defendants' version of the events of April 18th and disbelieve Spears' version of the events.

However, we find there are no genuine issues of material fact as to whether Carter or Jessen used excessive force against Spears. When Spears was asked to list each defendant he contended used excessive force against him, Spears did not indicate Carter or Jessen were involved in the application of force. *Resp.* at ¶ 33(B).

### Inadequate Grievance Procedure

Spears contends his grievances were not handled properly, he did not always get responses, and he did not get copies of the grievances he did submit. *Resp.* at ¶ 26, ¶ 76. However, he has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures. He makes no argument that he was treated differently from other similarly situated prisoners, or that his grievances were ignored because of his exercise of his constitutional rights, or that his ability to exercise any specific constitutional right was chilled by defendants' actions.

"Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted). *See also Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (*citing Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Blagman*, 112 F. Supp. 2d at 542 (*citing, Scott v. Kelly*, 107 F. Supp. 2d 706 (E.D. Va. 2000), *aff'd*, 6 Fed. Appx. 187 (4th Cir. 2001)). "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005).

### Interference with Mail

Spears claims regarding the alleged mail tampering are subject to dismissal. Inmates have a First Amendment right of free speech to send and receive mail. *See Hudson v. Palmer*, 468 U.S. 517, 547, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977). Restrictions on this First Amendment right are valid "only if [they are]

reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

Here, Spears does not contend there was a limit placed on the number of legal or personal letters he could mail. He does not challenge a ban on the type of mail he could receive or send. He does not contend he was denied paper, writing instruments, or postage.

He has not suggested there was any ongoing practice of censorship or that the inspection procedures at the jail were unconstitutional. *See Jensen v. Klecker*, 648 F.2d 1179 (8th Cir. 1981)(Inspection procedures of incoming or outgoing non-legal mail for contraband have been upheld as constitutional.). Rather, Spears contends his mail was on one occasion tampered with by Leroy when she gave a letter addressed to him to another inmate. *See Complaint* (Doc. 1 at page 11)(letter contained information from Mercy Medical Center). An isolated incidence of mail tampering does not state a claim of constitutional dimension. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)(Plaintiff must show regular and unjustifiable interference-- an isolated incident of mail tampering is usually insufficient to establish a constitutional violation); *Zimmerman v. Tribble*, 226 F. 3d 568, 572 (7th Cir. 2000)(allegations of sporadic and short-term delays and disruptions are insufficient to state a claim under the First Amendment); *Rowe v. Shake*, 196 F.3d 778, 782-783 (7th Cir. 1999)(relatively short-term and sporadic delays in receiving mail not the result of content-based prison regulation or practice is insufficient to state a First Amendment claim).

### *Access to the Courts*

Spears also asserts the law library was inadequate and he was allowed insufficient time in the library. "Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)(*citing*, *Lewis v. Casey*, 518 U.S. 343,

116 S. Ct. 2174, 2179, 135 L. Ed. 2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494-95, 52 L. Ed. 2d 72 (1977)).   In *Myers*, the Eighth Circuit stated that:

> [t]o protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared. Inmates do not have a right, however, either to law libraries or to unlimited stamp allowances for legal mail.   Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts.   To state a claim that a law library or legal assistance program violates this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims.   Alleging theoretical inadequacies is insufficient. Inmates must instead show, for example, that a complaint that they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all.

*Myers*, 101 F.3d at 544 (citations omitted).

In *Cody v. Weber*, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the Supreme Court in *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) and *Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), "determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'" *Cody*, 256 F. 3d at 767-68 (*quoting Lewis*, 518 U.S. at 354-55).

In this case, Spears' denial of access to the courts claim fails because he has suffered no actual injury.   Spears concedes he was allowed to send and receive legal mail.   *Resp.* at ¶ 6(B).   He did not miss any deadlines for filing documents.   *Id.* at ¶ 7(D).   He was not prevented from filing a case or a claim because he was denied access to the law library.   *Id.*   He also concedes he was allowed access to the law library on numerous occasions.

-26-

Although "[p]ro se defendants have a right of access to adequate law libraries or adequate assistance from persons trained in the law," *United States v. Knox*, 950 F.2d 516, 519 (8th Cir. 1991)(quotations omitted), the right is not an abstract one and the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. *See also Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008)(Hartsfield failed to allege he was prevented from filing a complaint, or a filed complaint was dismissed for lack of legal adequacy. He only roughly and generally asserted that he was prevented from filing because he did not know what arguments to make. This claim is speculative and was properly dismissed). *See also Klinger v. Department of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic).

### Unconstitutional Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.). The

Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case. Spears maintains for a six month period of time he was not allowed to exercise outdoors. He also maintains the lack of cameras in the pods was prejudicial to the inmates.[8]

A constitutional violation exists if prison officials are deliberately indifferent to an inmate's exercise needs. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). A "lack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Id.* Among factors the court should consider in reviewing such a claim are: (1) the

---

[8]Spears has not asserted a claim that he was unconstitutionally denied a vegetarian diet. *See Complaint and Supplements thereto.*

opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement. *Id.*

Here, Spears was allowed out of his cell for an hour a day and had access to a day-room when out of his cell. *Resp.* at ¶ 58(A). While Spears maintains a BCDC policy prohibits inmates who are not in the outside recreation yard from running or working out, he has failed to present a copy of this policy or any evidence to support the existence of such a policy. Further, Spears did not mention this "policy" in any of his grievances about his recreation. In response to his grievances regarding outdoor exercise, he was told to ask the pod deputy. *Resp.* at ¶ 63. Nothing in the summary judgment record suggests Spears was ever told he could not exercise on his hour out of the cell. While the opportunity for outdoor exercise may constitute a constitutional violation, under the circumstances of this case, Spears has failed to create a genuine issue of material fact as to whether defendants were deliberately indifference to his need for exercise. *See e.g., Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006)("[A] factfinder might conclude that the risk of harm from three years of deprivation of any form of outdoor exercise was obvious and that DOC officials disregarded that risk by keeping Fogle in administrative segregation."); *LeMaire v. Maass*, 12 F.3d 1444, 1458 (9th Cir. 1993)(prison officials' response to isolate and control an inmate's outdoor exercise access because of continuing aggression and disciplinary problems that raised security concerns did not qualify as deliberate indifference). Spears has not alleged that he suffered any injury or decline in health because of the lack of exercise. *See Wishon*, 978 F.2d at 449. We therefore find this claim fails.

Spears also objects to there being no security cameras in the jail pods. *Resp.* at ¶ 62(A). He maintains the lack of security cameras result in deputies getting away with harming inmates and in

the inmates having no evidence regarding the incidents to support their claims of improper conduct. There is no requirement in the Eighth Amendment that a jail have, or maintain, specific security measures. Instead, Spears must show that there is a genuine issue of fact as to whether the lack of security cameras posed a substantial risk of serious harm to the inmates and that the defendants were deliberately indifferent to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

### Denial of Medical Care

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, Spears must prove that defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

In this case, Spears' denial of medical care claim is premised on his belief that he should have been tested for Hepatitis after he sustained an open cut on a cell door. He maintains the inmate in the cell had Hepatitis. Spears does not deny that he adequate or prompt medical care for his injuries on April 18th. He was seen and treated by the jail nurse and then sent to the emergency room. His request for testing for Hepatitis dated July 5, 2008, was refused. *Resp.* at ¶ 53(A). However, Spears has not indicated that this refusal or delay in his being tested detrimentally affected his health.

"To avoid summary judgment an inmate alleging that a delay in treatment constitutes a constitutional deprivation must produce medical evidence to establish that the delay had a detrimental effect." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Spears has offered no verifiable medical evidence to establish that the failure of the jail nurse to test him for Hepatitis on July 8th caused him any harm. With respect to Dr. Huskins, there is no evidence in the summary judgment record to suggest that the nurse's response to the medical request somehow precluded Spears from addressing this issue with the doctor. Spears was seen by Dr. Huskins on August 14th, September 8th, September 12th, and September 22nd. *Defts' Ex.* 5, Vol. 2, at page 7. I do not believe there are genuine issues of material fact as to whether deliberate indifference to Spears' serious medical needs was exhibited.

### Governmental Liability

Spears has named Sheriff Ferguson and Captain Hunter Petray as defendants. A claim of deprivation of a constitutional right cannot be based on a respondeat superior theory of liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). In other words, Sheriff Ferguson cannot be held liable merely because he employs the officers allegedly responsible for violating Spears' constitutional rights. *Id.* Similarly, Petray cannot be held liable solely on the basis

that he was a supervisor of the individuals alleged to be responsible for the constitutional violations. *Id.*

There is no allegation that Sheriff Ferguson or Petray were personally involved in any way in the actions taken by the other named defendants. *See Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making the decisions); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).

To establish the liability of Benton County, Spears has to show his constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non policymaking employees of the municipality "as to constitute a custom or usage with the force of law." *Ware v. Jackson County,* 150 F.3d 373, 880 (8th Cir. 1998). In this case, Spears seeks to impose liability of Benton County but has not alleged the existence of a custom or policy that was the moving force behind the alleged denials of his constitutional rights. Defendants are therefore entitled to judgment as a matter of law on the claims against Sheriff Ferguson and Captain Petray.

### Conclusion

For the reasons stated, I recommend that defendants' motion for summary judgment (Doc. 33) be granted in part and denied in part. Specifically, I recommend that the motion be granted with respect to all claims except Spears' claim he was subjected to excessive force on April 18, 2008. This would dismiss all claims against the following defendants: (1) Sheriff Keith Ferguson; (2) Captain Hunter Petray; (3) Lt. Carter; (4) Deputy Leroy; (5) Sgt. Jessen; (6) Nurse Marsha Smith; and (7) Dr. John Huskins.

The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this **23rd day of February 2010.**

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE