IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANTHONY MICHAEL SPEARS                                                                    PLAINTIFF

v.                                Civil No. 08-5171

DEPUTY HERNANDEZ; SGT. VAUGHN;
DEPUTY STRICKLAND; DEPUTY LOWTHER;
and DEPUTY GREEN                                                                          DEFENDANTS

## MEMORANDUM OPINION

The plaintiff, Anthony Michael Spears (hereinafter Spears), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Spears is currently incarcerated in the East Arkansas Regional Unit of the Arkansas Department of Correction. In this action, Spears contends excessive force was used against him on April 18, 2008, while he was incarcerated in the Benton County Detention Center.

This case is before me, pursuant to the consent of the parties (Doc. 58), for decision. On September 16, 2010, a trial was held. At the conclusion of the trial, the case was taken under advisement pending preparation of this memorandum opinion.

### I. Background & Evidence Presented

At the evidentiary hearing, the following witnesses testified: (1) Michael Shane Wilmoth; (2) Malcolm Joseph Hendrix; (3) Anthony Michael Spears; (4) Robert Harris; (5) Joe Vaughn; (6) Juan Hernandez; (7) Aaron Lowther; (8) Charles Strickland; and (9) Larry Green;   For purposes of discussion, the testimony of the witnesses will be summarized in the first person.

*Michael Shane Wilmoth*

I am currently incarcerated in the Varner Supermax Unit of the Arkansas Department of Correction (ADC). I know Spears. I was incarcerated at the Benton County Detention Center (BCDC) on April 18, 2008. I recall the day.

I was in E-pod. The pod has two tiers. I was standing at the door of my cell. Spears' cell was near mine. Spears was in the day-room about twenty feet away and I witnessed the entire event. The day-room has tables and showers in it. The showers are on the left. The cells are around the day-room starting at the shower in an "L" shape. The pod door was by the control room.

Spears was standing by the pod door waiting for a pencil. He "hollered" for Sergeant Jessen. Jessen popped the door open and Spears went outside. They were outside of the pod for awhile--close to five minutes. I have no knowledge about what happened while they were outside the pod. When Spears came back in the pod, there was an officer in front and Strickland and Hernandez were at his sides. They were each holding one of Spears' arm. Sergeant Vaughn was behind them. They were about one-half of the way to his cell, when Spears stumbled. They rushed him face first into the door and took him to the floor. They were moving him fast. Spears was not handcuffed or shackled. After they took him to the floor, I believe they handcuffed him. I believe Spears was trying to talk to the officer. I couldn't hear what he was saying.

Jail staff repeatedly told Spears to stop resisting. Staff members say "quit resisting" all the time even when someone is not resisting. It doesn't mean anything. There was a lot of

yelling and screaming going on. It was hard to hear but I could see through the cell window. I heard some of what was said.

### *Malcolm J. Hendrix, Jr.*

I am currently incarcerated in the Washington County Detention Center. I know Spears. I was in the BCDC in April of 2008. I was in there nine months or so. I was involved in several altercations when I was in the jail. During one, my wrist was cut open. Spears was also involved in several altercations with both inmates and officers.

I was in my upstairs cell with the door closed looking through the window when this occurred. I could not really hear what was said. First they were in the hallway then Hernandez and another officer rushed in. Next, I saw them come up the stairs. Spears' cell was on the second floor. My cell was near the stairs. When Spears was coming up the stairs, he tripped. He was basically being dragged. His arms were "jacked up" behind him. I don't know if Spears was in shackles. After they got him to the door, Spears' head hit it. He was bleeding on his face.

In the BCDC, if you were in trouble, you were put in a pod where you would be locked down twenty-four hours a day. Pod E-104 or 103 was the hole.

### *Anthony M. Spears*

I am currently an inmate in the ADC. I was into the BCDC on October 3, 2007. On September 8, 2008, I was sentenced to a period of incarceration.

On April 18th, I was standing at the red line in front of the pod door calling for a pencil. The line is about a foot away from the door. You have to stand there until they talk to you. You yell through the door. Inmates are only allowed one hour for recreation. I yelled at Jessen and

asked for a pencil. Deputy Hernandez was at the control booth and he called me out there. When the door opened, I went through it, shut it behind me, and asked for a pencil or to get one sharpened. I believe another inmate, Tracy Johnson, was standing there.

Hernandez started yelling at me for not following the rules. He was cussing me out. He asked why I did not follow the rules. He said I violated the rules because I had been yelling. The door popped back open and I shut it again. Hernandez ordered me to go back into the pod. He said go back in or I will push you in. I did not comply and shut the door. Hernandez came out of the control booth. He tried to grab me and put me on the ground from behind. He grabbed at the door but it was locked. He could not unlock the door from where he was. I put my hands up to my face and chest to protect myself. I was not fighting. I did not like being pushed around. The next thing I knew other officers had arrived. I was getting kicked and hit in the leg and side. I was handcuffed behind my back.

They put me in handcuffs before going back into the pod. Sergeant Vaughn was in front and Deputy Strickland and Hernandez each had one of my arms. We got into the day-room near the tables when I had problems with my leg not working from being kicked. They rushed me into the door of cell 149. My head was cracked open. I was taken to the hospital and had to get stitches because of a laceration near my right eyebrow.

I have been in two or three fights with inmates and two incidents with guards.

*Robert Harris*

I was in the BCDC on April 18, 2008. I know Spears. We were cell-mates on the top tier. I believe it was cell number 244 for a period of time.

On April 18th, I was in my cell on the bottom tier. I saw Spears at the door. I did not think anything of it because people are always up there. I heard Spears ask for a pencil. The door did not open immediately. When they came back into the pod, I could hear that Spears was getting roughed up.

### Sergeant Joe Vaughn

I'm currently a deputy in Oklahoma. I was a sergeant at the BCDC on April 18, 2008. Jessen radioed for assistance. All jail staff with portable radios were to respond. I responded to E-pod with Strickland.

I observed Spears and Hernandez involved in an altercation. Spears was resisting and not going to the ground. Other deputies also responded. I ordered the deputies to place Spears on the ground. They did. Hernandez, Strickland and Lowther placed him on the ground. I believe the level of force used was less than would be applied if we deployed a taser. I would say that the level of resistance Spears was using was the toughest I have ever seen. Once he was on the ground, his level of resistance escalated. Spears was rolling and kicking and had his arms tucked under his body.

I gave multiple commands for Spears to quit resisting. Spears was kicking and I was struck in the head. The altercation took a lot longer than I would have liked. It lasted ten to fifteen minutes. I initiated four or five knee strikes to Spears' common peroneal area. I was the only one who initiated any strikes. The knee strikes interrupt the thought processes of the detainee involved. When all this was going on, it was difficult to keep track of everyone and what they were doing.

Jessen knew I had been kicked. He used a arm lock to obtain pain compliance.

Carter used mandibular pressure point for pain compliance. I saw him administer this. The purpose is to create an overwhelming sensation of intense pain. The pressure is against a nerve ending.

It took six or seven people to get Spears under control. Lieutenant Carter and Captain Petray were also there. I didn't make a note of their presence in my incident report. *Defendants' Exhibit* 10 (hereinafter *Defts' Ex.*). I only discovered that Petray was in pod control after I took Spears to the nurse. During the altercation, when Spears was on the ground, I was there as were Hernandez, Strickland, Lowther, Green, and Carter.

Spears was eventually put in handcuffs. I put the cuffs on the arm I was holding. You want to use the least amount of force with a handcuffed inmate.

I opened the door to cell 141, I believe, in E-104. We passed the shower and I told the officers to be careful because there was water on the floor from the shower. Hernandez and Strickland had Spears between them. I was watching Spears be escorted. Spears was thrashing about and moving side to side. He pulled away from Hernandez and Strickland. At one point, Spears was struggling so wildly that I had them put him against the wall. Spears was turning his head to the right toward Hernandez. I thought Spears was going to head butt Hernandez. Spears was placed against the wall not shoved or forced. He went to the wall very quickly.

Spears' legs were not working very well. He turned his head and ducked. At this point, we were way past the shower between the cleaning closet and the first cell door. Spears was placed on the wall next to the cleaning closet. We were approximately four feet from the wall when I gave the order.

I saw Spears had a laceration. I ordered Hernandez and Strickland to take Spears to the nurse's station. The nurse looked at his cut. My lieutenant noticed my elbow was bleeding. I also had scratches on both forearms and wrists and had been kicked in the face above the orbital bone and on the head resulting in a knot. Spears was given a bag of ice and I got one for myself. I did not need any further medical treatment. Spears' level of resistance continued until he was at the nurse's station. Spears was then transported to the hospital where he received, I believe, six stitches. When he was brought back to the jail, he was placed in a cell in medical holding. Spears apologized for kicking me in the head.

As noted, there were actually two incidents involving the use of force; one inside the pod and one outside the pod. In between the two incidents, Spears' continued to resist. The level of resistance for a sober inmate was one of the longest I had ever seen. Spears was respectful to me but he was a known fighter. *See Defts' Ex. 2* (incident reports from 1/23/2008); *Defts' Ex. 4* (incident reports from 4/19/2008); *Defts' Ex. 5* (incident reports from May 8, 2008); *Defts' Ex. 6* (incident reports from 5/20/2008); *Defts' Ex. 7* (incident report from 8/27/2008).

Defendants' Exhibit 8 is use of force policy. If there is a potential altercation, first you try verbal persuasion, then a verbal warning, then a show of force, and finally control holds. At least while I was present, the policy was followed on April 18th. I was not there when the use of force began. I have had training in the use of defense tactics. When I have to put my hands on an inmate, I do it as I was taught.

### Deputy Juan Hernandez

On April 18, 2008, I was a jail deputy at the BCDC. I worked there for four years and four months.

On April 18th, at about 1:00 p.m., I was outside the pod control dispensing medication when I noticed screaming. I unlocked the door with a button on the control panel and Spears came out and the door shut. He wanted a pencil. I told him I was busy at the moment and he would have to wait. I told him I would get him a pencil later. I asked him, twice I believe, to go back inside the pod and he refused. I clicked the button to open the door again and Spears shut it. He kept his hand on the handle of the door. He told me that if I wanted him back in the pod, I would have to do it myself. You could tell he was determined not to go back in. I put my left hand on his elbow and placed my right hand on his wrist and said let's go. I was going to move him towards the door again. Jessen would have opened the door for me. Spears pulled away from me in an aggressive manner. He escaped my grasp. It was a bad situation because I did not know what Spears was going to do.

I moved again to place my left hand on the door knob. I was not successful. He was trying to control the situation. I was struggling trying to gain control. This probably went on for about two minutes.

Someone radioed for assistance and the deputies arrived in a couple of minutes. Jessen was in pod control. He was not allowed to leave pod control and could not assist me. Strickland was the first to arrive. We tried to put both of Spears' hands behind his back.

It took about five or ten minutes to get Spears under control. It was a group effort to gain control. He was handcuffed and then helped to his feet. The pod door was opened and we were escorting him into the pod. I was walking on his left side. Strickland was on his right. Spears was trying to jerk away. We needed to control the situation so Spears was placed against the

wall or door.  I did not hear the order to place him against the wall.  I did not have a taser but did have pepper spray.  Spears did not strike me.  I sustained no injuries.

After this, Spears was bleeding.  He was still being very belligerent.

I was aware of the use of force policy.  We used the minimum amount of force necessary, at the time, to gain control.  The use of force policy was not violated.

After the incident, I had several conversations with Spears.  I told Spears I was sorry for the whole incident--the way it ended up.  I maybe should have tried to talk to him more in an effort to calm him down.  But I do not think talking would have gone anywhere.  At that time, it would not have worked.  My actions were appropriate.

### *Deputy Erin Lowther*

I was employed at the BCDC on April 18, 2008, as a jailer.  I had only been working there for about thirteen months.

I do not know how the altercation started.  I responded to an assistance call by running to the area where assistance was needed.  When I arrived at E-pod, Hernandez and Strickland were trying to subdue Spears.  I paused for just a moment to take in the situation and then went immediately to a hands on use of force.  I was afraid for the safety of the officers and myself.

Vaughn was giving verbal commands to get Spears to the ground.  Spears was resisting.  They attempted to pull Spears to the ground.  I grabbed at him.  Hernandez and Strickland were behind Spears.  I tried to push Spears down by the shoulders.  I pulled on Spears' shirt and tried to pull him down.  I was in front.  I wrapped my arms around him and we both fell to the floor.  The incident last about three or four minutes after I got there.  I was a little excited.  We used the necessary amount of force to bring things under control.

I do not recall Jessen grabbing Spears' legs to keep him from kicking. I do not recall Spears hitting or kicking. But if it is in my report, I saw it.

I did not participate in the handcuffing. He was handcuffed with his arms behind his back. Even though he was handcuffed, he had freedom to move his body and legs. Hernandez and Strickland picked him up. We were ordered to take him back into E-pod. Hernandez was on his left and Strickland on his right. I was behind them and when they passed the corner I saw Spears pull away. I heard commands being given to him to stop resisting. He was pushed about three or four feet and pushed against the wall. In the process, Spears put his head down to stop or block them. This is when he hit the wall. I'm not sure why he did that. I do not believe he would have hit his head if he had not bent down.

It might have been easier to put him on the ground again. However, it is against policy to place an inmate on the ground while he is handcuffed. I believe it was a necessary use of force. The wall is used to subdue the inmate.

I relieved Hernandez and Strickland and escorted Spears to the nurse's station. I did not hit, punch, or strike Spears. I did not sustain any injuries.

I prepared an incident report. *Defts' Ex.* 3 pg. 4. I was aware of the use of force policy which has four steps: (1) verbal request; (2) verbal command; (3) officer presence; and (4) the minimum amount of force necessary to resolve the situation.

### Deputy Charles Strickland

On April 18, 2008, I was working at the BCDC. I am familiar with the use of force policy.

I was in the central hallway when Jessen called for assistance. Force was used to restrain Spears. He had already been engaged in a lengthy struggle. I believe it took four of us to put him on the floor: myself; Lowther; Green; and Hernandez. Spears was given verbal commands. We used only the amount of force necessary to control Spears.

I helped escort Spears into E-pod. When we went through the door, just as we passed the showers, Spears abruptly pulled away from Hernandez and threw his body into me. We were within three or four feet of the wall. I grabbed Spears' arm with both hands and proceeded to put him on the wall. I do not recall if I was given a command or did it myself. I did not hit, kick, punch, or strike Spears.

### *Deputy Larry Green*

On April 18, 2008, I was working at the jail. I knew the policy about the use of force. The bottom line is to use the minimum amount of force to secure and de-escalate the situation.

I responded to an assistance call. Hernandez was in trouble. When, I entered the pod control area, Strickland and Lowther had arrived ahead of me. Hernandez had been involved in an altercation for several minutes and looked tired.

Three deputies were already engaged. I used an open hand on Spears' back and placed the other hand on his forearm to put him on the floor.

I do not know what started the incident. No excessive force was used.

## II. Discussion

"Because [Spears] was a pretrial detainee at the time of the alleged violation of his constitutional rights, we analyze [his] claim against [the defendants] under the Fourteenth

Amendment, rather than the Eighth Amendment." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

An objective reasonableness standard is used in analyzing the claims of pretrial detainees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. *See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

Keeping these principles in mind, I turn to an examination of the evidence presented. Immediately prior to the altercation, the evidence establishes that Spears was loudly demanding a pencil while Hernandez was dispensing medication. It is undisputed that Spears was ordered twice to return to the pod and both times refused to comply shutting the pod door. It is also

undisputed that Spears has a history of being involved in altercations having had two or three fights with inmates and two incidents with guards.

While Spears maintains he was not aggressive or resisting, he did testify that he kept his arms against his body to protect himself and would not allow the officers to move him. The second use of force occurred as Spears was being escorted back into the pod. He indicates he was having difficulty walking and stumbled. Defendants all testified Spears pulled away from them. However, it is clear that Spears made a sudden movement of some kind that defendants interpreted as resistance. As a result, Spears was placed against the wall. Spears testified he did not like being pulled around but was not angry or resisting.

Vaughn, Hernandez, Lowther, Strickland, and Green all testified Spears was resisting and being aggressive during the incident that occurred outside the pod. None of the former BCDC detainees could see what was occurring outside the pod. I find credible the testimony of Vaughn that the knee strikes and pain compliance control tactics were applied in an effort to secure and control Spears. I also find credible the testimony that the situation quickly escalated to one dangerous to the safety of both the defendants and Spears.

When Spears was taken to the wall, it is clear that something went wrong because he was injured. However, I do not believe that the evidence establishes that any of the defendants used excessive force against Spears. Instead, the evidence shows Spears either stumbled or pulled away and Hernandez and Strickland quickly responded by pushing Spears to the wall. Whether Spears ducked his head or not, the use of force was not unreasonable merely because some injury occurred.

-13-

During both incidents, it was reasonable for the officers to believe Spears constituted a threat to safety. After careful consideration, I conclude the defendants did not use excessive force against Spears. The evidence establishes defendants acted in a reasonable way in light of the circumstances.

### III.  Conclusion

For the reasons stated, judgment will be entered in favor of the defendants . A separate order in accordance with this opinion will be entered.

DATED this 18th November 2010.

/s/ *J. Marschewski*
 HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)